UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTY SLACK,

    Plaintiff,

v.

FAIR ISAAC CORP. and MYFICO CONSUMER SERVICES, INC.,

    Defendants.

No. C 05-0257 MHP

**MEMORANDUM & ORDER**
**Re: Motion to Dismiss**

On January 18, 2005, plaintiff Christy Slack filed this putative class action against defendants Fair Isaac Corp. and myFICO Consumer Services, Inc. (collectively "defendants") alleging violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq., and the California Credit Services Act of 1984, Cal. Civ. Code § 1789.10 et seq. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's claims under 15 U.S.C. § 1679b(a)(3)-(4) and California Civil Code § 1789.13(g)-(h) for failure to state a claim upon which relief can be granted. Having considered the parties' arguments fully and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Defendant Fair Isaac Company ("FICO") is a San Rafael, California financial services company best known for providing consumer credit rating agencies and lenders with "FICO" scores, a measure of consumer credit risk derived from the company's proprietary credit risk model. Defendant myFICO Consumer Services, Inc. ("myFICO") is a subsidiary of FICO that provides consumers with various credit-

related services, including a number of products offered via defendants' "myFICO.com" website. Among those products is an online credit counseling service marketed as the "Suze Orman FICO Kit Platinum" (hereinafter "Platinum Kit"). The Platinum Kit provides consumers with advice on how to manage their debts and improve their credit ratings. Specifically, defendants' website represents that the kit provides its purchasers with "personalized advice" on how they can improve their FICO score and "personal coaching" on matters related to consumer credit. In addition, a subscription to the Platinum Kit service includes information about the purchaser's credit history such as his or her FICO score and credit reports from each of the three major credit reporting agencies.[2]

Plaintiff Christy Slack, a resident of Milton, Florida, visited the myFICO website in September 2004. After viewing the site, plaintiff purchased the Platinum Kit for $49.95, arranged to have that amount billed to her credit card, and obtained her FICO score and a TransUnion credit report via the myFICO site. In addition, defendants' website informed plaintiff that her FICO score of 508 was "well below the average of U.S. consumers" and that the types of credit available to her and the interest rates that she might be eligible to receive would be limited accordingly. The site also listed various reasons why plaintiff received a below-average FICO score and advised plaintiff that she could improve her credit rating if she paid her bills on time and that her score would continue to improve so long as she continued to do so.

Plaintiff now contends that defendants misled her into believing that the Platinum Kit would provide her with "advanced credit management services" and "personalized assistance" in improving her credit rating. Instead, plaintiff alleges that she received only generalized, computer-generated advice that failed to account for her credit profile or her borrowing needs. In addition, plaintiff asserts that the myFICO website is misleading and deceptive in a host of other ways. For example, plaintiff alleges that the website's "Which Product is Right for You?" section recommends that consumers purchase the Platinum Kit regardless of how they respond to certain questions regarding their credit history, credit ratings, and expected future credit needs. Plaintiff also alleges that defendants falsely imply that purchasers of the Platinum Kit will receive updated credit reports during the course of their one-year subscription, when in fact the kit includes only one report from each of the credit agencies. In addition, plaintiff asserts that defendants misleadingly

2

fail to inform consumers that they are entitled under California law to receive annual credit reports from each of the major credit reporting agencies for a fee of $8.00 per report. Finally, plaintiff contends that the design of defendants' website, which she characterizes as "segmented and incomplete," has the effect of misleading and deceiving consumers.

Based on these allegations, plaintiff filed the instant action on January 18, 2005. On March 10, 2005, plaintiff filed an amended complaint, alleging causes of action under the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq., and the California Credit Services Act, Cal. Civ. Code § 1789.10 et seq., as well as asserting a claim for unjust enrichment under California law. In addition, plaintiff seeks certification to represent two classes of individuals, which she respectively identifies as all persons who purchased services from defendants in violation of the Credit Repair Organizations Act and the Credit Services Act during the relevant limitations periods applicable to each of the two statues.

On April 22, 2005, defendants moved to dismiss certain aspects of plaintiff's claims for relief under the Credit Repair Organizations Act and Credit Services Act. Specifically, defendants contend that plaintiff cannot state a claim upon which relief can be granted under 15 U.S.C. § 1679b(a)(3)-(4) or under California Civil Code § 1789.13(g)-(h) and thus urges the court to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court considers the issues raised by defendants' motion in the discussion that follows.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "[U]nless it appears beyond doubt that [a] plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true all material allegations of the complaint, and all reasonable inferences must be drawn in favor of the non-moving party. See, e.g., Cahill v. Liberty Mut.

3

Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) (citations omitted).  Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

DISCUSSION

I.	Credit Repair Organizations Act

Plaintiff's first cause of action arises under the Credit Repair Organizations Act.  In enacting that statute, Congress sought to regulate the conduct of businesses that provide consumers with services or advice related to improving their credit record, credit history, or credit rating.  15 U.S.C. § 1679a(3)(A).  Such businesses, which the statute defines as "credit repair organization[s]," must comply with a number of statutory requirements intended to ensure that consumers "are provided with the information necessary to make an informed decision regarding the purchase of [credit repair] services" and are protected from "unfair or deceptive advertising and business practices."  Id. §§ 1679(b), 1679a(3)(A); see also FTC v. Gill ("Gill I"), 71 F. Supp. 2d 1030, 1036 (C.D. Cal. 1999), aff'd, 265 F.3d 944 (9th Cir. 2001).

Although plaintiff alleges numerous violations of the Credit Repair Organizations Act, only two provisions of the statute are addressed by defendants' motion to dismiss.  The first, 15 U.S.C. § 1679b(a)(3), prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization."  15 U.S.C. § 1679b(a)(3).  The second, 15 U.S.C. § 1679b(a)(4), provides that no person may "engage . . . in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of [a] credit repair organization."  Id.  For purposes of the instant motion, defendants concede that they are "credit repair organization[s]" subject to regulation under the statute.  Thus, the question before the court is whether plaintiff's amended complaint alleges an untrue or misleading representation or a fraudulent or deceptive business practice within the meaning of the relevant provisions of section 1679b(a).[3]  The court considers each of these provisions below.

A.	15 U.S.C. § 1679b(a)(3)

4

UNITED STATES DISTRICT COURT
For the Northern District of California

The first issue raised by defendants' motion is whether plaintiff's amended complaint adequately alleges that defendants made or used an "untrue or misleading representation" in connection with the advertisement or sale of credit repair services via the myFICO website. However, before reaching the merits of the allegations in plaintiff's amended complaint, the court must identify the proper standard for pleading violations of 15 U.S.C. § 1679b(a)(3).

As the Ninth Circuit has yet to address the issue of what pleading standard applies to claims brought pursuant to section 1679b(a)(3), the starting point for the court's inquiry is Federal Rule of Civil Procedure 9(b), which requires "the circumstances constituting fraud" to be pleaded with particularity. While section 1679b(a)(3) on its face requires a plaintiff to establish the false or misleading nature of the defendant's representation, plaintiff argues that the provision nonetheless falls outside the scope of Rule 9(b) because it does not require proof of a number of elements of a claim for common law fraud (for example, scienter and intent to induce reliance). See, e.g., FTC v. Gill ("Gill II"), 265 F.3d 944, 955 (9th Cir. 2001). However, Rule 9(b) expressly provides that its heightened pleading standard extends to "the circumstances constituting fraud" as well as to causes of action that require proof of fraud as an element of the claim. Fed. R. Civ. P. 9(b). The Ninth Circuit has interpreted such circumstances to extend to any claim that "sounds in fraud," explaining that:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (citations omitted). In other

words, Rule 9(b) applies to allegations premised upon fraudulent conduct regardless of whether fraud is a necessary element of the claim.

Applying that standard here, it cannot be seriously disputed that the misrepresentations and omissions alleged in plaintiff's amended complaint fall within the scope of Rule 9(b). While it may be true that the elements of fraud need not be proven to establish liability under section 1679b(a)(3), plaintiff's claims rely almost exclusively on defendants' allegedly "misleading and deceptive" conduct. Such conduct "sounds in fraud" even if it would not necessarily give rise to a cause of action for deceit at common law. Thus, to the extent that plaintiff intends to rely upon that conduct for the purpose of proving that defendants have made false or misleading representations, the heightened pleading standard of Rule 9(b) applies.

This conclusion is not necessarily fatal to plaintiff's claim, however, provided that her amended complaint complies with the rule's heightened pleading standard. To do so, the complaint must "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (citations omitted), cert. denied, 516 U.S. 810 (1995). In addition, Rule 9(b) requires that a complaint "set forth an explanation as to why the statement or omission complained of was false and misleading." In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

Construing the pleadings in the light most favorable to plaintiff, it is apparent that these requirements are met by the allegations in the amended complaint. For example, plaintiff alleges that although the myFICO website states that the Platinum Kit will provide "customized advice on what [consumers] need to do to improve [their] credit," plaintiff received only a general assessment of the impact that her low FICO score was likely to have on her ability to obtain credit and a recommendation that she pay her bills on time. Pl.'s Am. Compl. ¶¶ 22, 25. This clearly alleges a false or misleading statement. In addition, plaintiff's amended complaint explains why this statement was false or misleading, asserting that defendants led plaintiff to believe that she was purchasing a service that would provide her with personalized advice on how to improve her credit when in fact the Platinum Kit was designed to provide nothing more than a computer-generated response based on its purchaser's credit history. Id. ¶¶ 25-26. In short, plaintiff's allegations regarding the Platinum Kit set forth the time, place, and nature of the false or misleading

6

statements that defendants allegedly made and explain why those statements were untrue. This degree of particularity easily satisfies the requirements of Rule 9(b).

While this conclusion is by itself sufficient to warrant denying defendants' motion to dismiss plaintiff's section 1679b(a)(3) claim, it should also be noted that the amended complaint includes a number of other allegations related to the design of the myFICO website and the nondisclosure of facts regarding a consumer's rights under California law and the business practices of the consumer credit industry. Pl.'s Am. Compl. ¶¶ 11, 18, 22, 27-30. Admittedly, these allegations fail to identify any express representation that defendants have made regarding the services provided by the myFICO website. However, as the Gill decisions of the Central District of California and Ninth Circuit make clear, this is not the proper standard to apply in evaluating the falsity of a credit repair organization's statement under 15 U.S.C. § 1679b(a)(3). The Gill case arose from the FTC's allegations that two lawyers made false or misleading representations concerning their credit repair services, including numerous statements in radio and newspaper advertisements. See Gill I, 71 F. Supp. 2d at 1033. In determining whether those statements violated the Credit Repair Organizations Act, the district court noted that inquiry under section 1679b(a)(3) must focus on whether "the overall net impression" that is conveyed by a statement in an advertisement is false and misleading. Id. at 1043 (quoting FTC v. United States Sales Corp., 785 F. Supp. 737, 745 (N.D. Ill. 1992)). Thus, the district court concluded that both explicit misrepresentations and impliedly misleading statements can give rise to claims under the Credit Reporting Organizations Act. Id. On appeal, the Ninth Circuit affirmed, observing that statements which create "an overall net impression" of falsity may be actionable under 15 U.S.C. § 1679b(a)(3)). See Gill II, 265 F.3d at 956 (upholding the district court's order granting summary judgment in favor of the FTC).

Although Gill is clearly distinguishable on its facts from the case at bar, its holding is nevertheless apposite to the allegations in plaintiff's amended complaint, which, as noted above, include a number of implicitly false statements relating to the credit repair services provided by the myFICO website. Under the standard set forth in Gill I and affirmed by the Ninth Circuit in Gill II, such implicit misrepresentations may properly be considered in determining whether the "overall net impression" created by the website is misleading. See Gill II, 265 F.3d at 956; Gill I, 71 F. Supp. 2d at 1043. Those implicit representations

7

1 thus serve to bolster plaintiff's claim that the myFICO site expressly misrepresents the nature of services
2 provided to purchasers of the Platinum Kit. Accordingly, having already made clear that those express
3 misrepresentations are by themselves sufficient to state a claim under section 1679b(a)(3)), it follows *a*
4 *fortiori* that plaintiff's amended complaint as a whole adequately alleges a violation of that provision. The
5 court therefore denies defendants' motion for partial dismissal as to that claim.

      B.     15 U.S.C. § 1679b(a)(4)

The second issue raised by defendants' motion to dismiss turns on whether plaintiff has stated a claim under 15 U.S.C. § 1679b(a)(4). Under section 1679b(a)(4), credit repair organizations are prohibited from engaging in or attempting to engage in fraudulent or deceptive business practices in connection with the provision of credit repair services. 15 U.S.C. § 1679b(a)(4). Again, because defendants do not contest the fact they are credit repair organizations for purposes of the instant motion, the issue before the court is whether plaintiff's allegations concerning the services that defendants have offered via the myFICO website could be found to be fraudulent or deceptive business practices within the meaning of the Credit Repair Organizations Act.

For the reasons stated above, there can be no serious dispute that the heightened pleading standard of Rule 9(b) applies to plaintiff's claim under section 1679b(a)(4). Nonetheless, in adjudicating a motion to dismiss under Rule 12(b)(6), the court remains obligated to construe the pleadings in the light most favorable to the nonmoving party. See Cahill, 80 F.3d at 337-38. Here, plaintiff alleges that defendants have represented that the Platinum Kit that will provide its purchasers with personalized advice on how to improve their credit, when in fact that product provides only computer-generated responses that fail to account for the details of a particular purchaser's credit history or future credit needs. Granting plaintiff the benefit of all favorable inferences, it is impossible to conclude that proof of such facts at trial could not establish defendants' liability under 15 U.S.C. § 1679b(a)(4). Furthermore, while the remaining allegations in plaintiff's amended complaint may or may not prove to be relevant in determining whether defendants' conduct amounts to a fraudulent or deceptive business practice, that inquiry involves questions of fact that are not properly addressed on a motion to dismiss. Accordingly, the court denies defendants' motion to dismiss plaintiff's claim under section 1679b(a)(4).

II.     California Credit Services Act

In addition to alleging violations of the Credit Repair Organizations Act, plaintiff's amended complaint also alleges violations of the California Credit Services Act. Defendants' motion to dismiss addresses two provisions of that statute, California Civil Code § 1789.13(g) and (h). Much like 15 U.S.C. § 1679b(a)(4), Civil Code §1789.13(h) prohibits "credit services organization[s]" from engaging in fraudulent or deceptive business practices in connection with the promotion or sale of credit repair services. Thus, given that defendants' motion does not raise the issue of whether FICO and myFICO are credit services organizations subject to the Credit Services Act's anti-fraud provisions, the preceding discussion of plaintiff's claim under 15 U.S.C. § 1679b(a)(4) compels the court to conclude that plaintiff's amended complaint states a claim under Civil Code §1789.13(h).

However, a different resulted is warranted with respect to Civil Code §1789.13(g). Paragraph (g) of section 1789.13 provides that no credit services organization may:

> [m]ake or use any untrue or misleading representations in the offer or sale of [its] services, including either of the following:
>
> (1) Guaranteeing or otherwise stating that the organization is able to delete an adverse credit history, unless the representation clearly discloses, in a manner equally as conspicuous as the guarantee, that this can be done only if the credit history is inaccurate or obsolete and is not claimed to be accurate by the creditor who submitted the information.
>
> (2) Guaranteeing or otherwise stating that the organization is able to obtain an extension of credit, regardless of the buyer's previous credit problems or credit history, unless the representation clearly discloses, in a manner equally as conspicuous as the guarantee, the eligibility requirements for obtaining an extension of credit.

Cal. Civ. Code. § 1789.13(g). There are no published opinions interpreting this provision of the Credit Services Act. Nonetheless, the examples of "untrue or misleading representations" listed in the statute plainly indicate that it is directed at credit service agencies that falsely "guarantee[] or otherwise stat[e]" that they are able to obtain an extension of credit on behalf of a consumer or falsely promise to remove adverse entries from a consumer's credit history. Admittedly, these are only examples of the type of false or misleading representations that are "include[d]" within the scope of the statute. Nevertheless, interpreting the statute's "untrue or misleading representations" term in light of these examples, it is apparent that section 1789.13(g) is directed at credit services organizations that make false promises to obtain credit, to delete

9

adverse credit history, or to engage in similar fraudulent or misleading practices.  This view is also supported by the legislative history of the Credit Services Act, which makes clear that the statute primarily targets "unscrupulous" credit services providers that "offer to consolidate debt, set up payment plans and budgets, attempt to clean up a person's credit record or obtain credit for that person in exchange for a fee."  California Bill Analysis, Senate Judiciary Comm., A.B. 2279 (July 9, 1996).

This type of conduct is simply not alleged in plaintiff's amended complaint.  It is true that plaintiff asserts that defendants promised to provide her with customized advice that would permit her to find errors in her credit report and correct them.  Pl.'s Am. Compl. ¶ 9.  However, this does not amount to a promise to remove information from plaintiff's credit report, false or otherwise.  Similarly, although defendants are alleged to have offered information on interest rates for consumer credit, id. ¶ 23, nothing in the amended complaint suggests that defendants have promised to obtain an extension of credit for plaintiff or for any similarly situated individual.  Thus, because plaintiff has failed to allege any acts by defendants that might possibly give rise to a violation of Civil Code § 1789.13(g), the court grants defendants' motion to dismiss plaintiff's claim under that provision of the Credit Services Act.

CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: June 27, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

**ENDNOTES**

1. Unless otherwise noted, the facts sets forth below are drawn from the allegations in plaintiff's amended complaint.

2. The three major credit reporting agencies whose credit history reports are available via defendants' website are Equifax, Experian, and TransUnion.

3. In addition to the facts alleged in the amended complaint, both parties cite to material from the myFICO website that falls outside the four corners of the pleadings. The court assumes without deciding that the myFICO site is incorporated by reference into the amended complaint and thus could be considered for purposes of adjudicating a motion to dismiss. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). However, neither party has submitted any competent evidence of the myFICO's site's contents at the time that it was viewed by plaintiff or, for that matter, by any member of the putative classes of individuals that plaintiff purports to represent. In the absence of such evidence, the sufficiency of plaintiff's allegations must be determined based solely on the allegations in the pleadings and any judicially noticeable facts. Accord id. The facts upon which the following discussion is predicated are therefore limited accordingly.